**SO ORDERED.**

**SIGNED this 6 day of March, 2015.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

PETER B. CROMWELL, JR. and           CASE NO. 14-03707-5-SWH
KERI M. CROMWELL,

                                                            CHAPTER 7

        DEBTORS.

## ORDER ALLOWING MOTION TO DISMISS FOR ABUSE

The matter before the court is the bankruptcy administrator's motion to dismiss this case for abuse under 11 U.S.C. § 707(b). A hearing was held in Raleigh, North Carolina, on December 16, 2014, at the conclusion of which the court took the matter under advisement.

### BACKGROUND

The debtors, Peter and Keri Cromwell, filed a petition seeking relief under chapter 7 of the Bankruptcy Code on June 27, 2014. The bankruptcy administrator filed a notice of presumed abuse on August 5, 2014 and requested a 2004 examination of the debtors. Thereafter, the bankruptcy administrator filed a timely motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3). The debtors filed a response in opposition to the motion on September 25, 2014.

The debtors are married and reside in Cary, North Carolina. They have two children, a twelve year old daughter and a nine year old son. According to the schedules filed by the debtors, their total debt amounts to $669,258.56, with $457,696.56 in secured debt, $0 in priority unsecured debt, and $211,562 in non-priority unsecured debt.[1] Their primary debts include a payment on a 2007 Nissan Murano, two mortgages on their primary residence in Cary, mortgages for two properties purchased near Wilmington and in Rockingham County, a student loan payment, and two Bank of America credit cards–one in Mr. Cromwell's name, and one held jointly by Mr. and Mrs. Cromwell. The debtors maintain that they have consumer debts in the amount of $322,878 (less than one-half of their total debt), including the mortgages on their primary residence, and that they thus have primarily business debts.

The bankruptcy administrator asserts that the debtors' debts are primarily consumer in nature and that § 707(b)(1) is thereby invoked. Additionally, the bankruptcy administrator seeks a finding of abuse under § 707 (b)(3) because the debtors have allegedly understated their income. The debtors disagree with the bankruptcy administrator's characterization of their debts and in both their petition and in their response, label their debts as primarily business in nature. Mr. Cromwell testified that his Wilmington and Rockingham County investment lots were the driving force behind his chapter 7 filing. Additionally, the debtors disagree with the bankruptcy administrator with respect to two major portions of their debt. First, they maintain that a Bank of America credit card with a balance in excess of $75,000 is a business debt incurred to support 8PM LLC, an entity of which Mr. Cromwell is the sole owner. Furthermore, they classify a $62,000 student loan debt as

---

[1] The total numbers cited are reflected on the debtors' Schedules D, E, and F, and the bankruptcy administrator has not disputed the amounts of these debts.

a business debt, since Mr. Cromwell incurred the debt in order to enhance his marketability to employers and, ultimately, to sustain a profit.

According to Schedule I, Mrs. Cromwell is employed as a communication and executive support professional by a company called ABB. Mr. Cromwell shows no income on Schedule I, and Mrs. Cromwell reports income in the amount of $5,166.67. She deducts from that amount $965 in taxes, Medicare and social security, $412.75 in mandatory retirement contributions, and $323.90 in insurance. Accordingly, the debtors' total net monthly household income according to Schedule I is $3,465.02.

The debtors deny any ability to fund a chapter 13 plan. In fact, the debtors originally filed under chapter 13, but in light of a confession of judgment from a Homeowner's Association related to their Wilmington investment lot, they found themselves compelled to re-file for chapter 7 relief. The debtors claim that the HOA judgment makes their debts primarily business in nature, and argue that but for their failed investments in the two lots, they would not have filed bankruptcy.

## DISCUSSION

Section 707(b)(1) provides that the court may dismiss a case filed by an individual debtor with primarily consumer debts if granting chapter 7 relief would be an abuse of the Bankruptcy Code. 11 U.S.C. § 707(b)(1). If the debtor's debts are primarily business debts, § 707(b)(1) is inapplicable. In re Fish, 2014 WL 657247, at *2 (Bankr. E.D.N.C. Feb. 20, 2014). Alternatively, if the debtor's debts are primarily consumer in nature, the court must perform a calculation under § 707(b)(2) to determine if a presumption of abuse exists. If no presumption exists under § 707(b)(2), abuse can still be found under a bad faith or totality of the circumstances analysis pursuant to § 707(b)(3). However, the court need not proceed under either § 707(b)(2) or (3) if it

3

determines that the debtor's debts are not primarily consumer. The bankruptcy administrator carries the burden of establishing the applicability of all elements of § 707(b). See In re Hornung, 425 B.R. 242, 248 (Bankr. M.D.N.C. 2010) ("The moving party, in this case the Bankruptcy Administrator, has the burden of proving abuse pursuant to Section 707."). We turn, therefore, to the consumer/business determination first.

1. *Whether the debtors' debts are primarily consumer debts under* § 707(b)(1)

The bankruptcy administrator disagrees with the debtors' characterization of their debts as primarily business in nature, and contends that the debtors have primarily consumer debts regardless of how the investment lots or student loans are classified. The two charts below reflect the bankruptcy administrator's classification of each debt, under several scenarios and demonstrate the predominance of consumer debts regardless of the classification of the investment lots or student loans. These classifications stand in contrast to the debtors' classification of their debts, which is also reflected below.

**Bankruptcy administrator's classification with the investment lots in personal column and student loan in business column**

| Creditor | Business | Personal | Description |
|---|---|---|---|
| Bank of America | | $7,221.86 | Nissan |
| Onslow County Tax | | $0.00 | Wilmington lot |
| PNC Bank | | $19,200.00 | Second on residence |
| Quicken | | $291,240.00 | First on residence |
| Summerhouse - HOA | | $10,000.00 | Wilmington lot |
| Wake County Rev. | | $0.00 | Residence |
| Wells Fargo | | $130,034.70 | Wilmington lot |
| IRS | | $0.00 | Notice only |
| NC Dept. Of Rev. | | $0.00 | Notice only |
| Bank of America | $75,724.00 | | Business debt on F |
| Bank of America | | $8883.00 | Debt owed |
| BB&T | $2600.00 | | Business debt on F |
| CAM | $7,800.00 | | Business debt on F |

| Creditor | Business | Personal | Description |
|---|---|---|---|
| CB/Ann Taylor | | $100.00 | Debt owed |
| Chase | $15,000.00 | | Business debt on F |
| Chase-Pier | | | Unknown - personal |
| Farm Credit | $36,000 | | Foreclosure of lot |
| Gercb/Old Navy | $204.00 | | Debt owed |
| Kohls/Capone | $136.00 | | Debt owed |
| Kross/Lieberman & Stone | $115.00 | | Medical |
| Brandon Reiter | $0.00 | | Debt owed |
| Sallie Mae | $62,000.00 | | Student loans |
| Wake Med | $3,000.00 | | Medical |
| **TOTALS** | **$137,124.00** | **$532,134.56** | |

**Bankruptcy administrator's classification with investment lots in business column and student loan in consumer column**

| Creditor | Business | Personal | Description |
|---|---|---|---|
| Bank of America | | $7,221.86 | Nissan |
| Onslow County Tax | | $0.00 | Wilmington lot |
| PNC Bank | | $19,200.00 | Second on residence |
| Quicken | | $291,240.00 | First on residence |
| Summerhouse - HOA | $10,000.00 | | Wilmington lot |
| Wake County Rev. | | $0.00 | Residence |
| Wells Fargo | $130,034.70 | | Wilmington lot |
| IRS | | $0.00 | Notice only |
| NC Dept. Of Rev. | | $0.00 | Notice only |
| Bank of America | $75,724.00 | | Business Debt on F |
| Bank of America | | $8883.00 | Debt owed |
| BB&T | $2600.00 | | Business debt on F |
| CAM | $7,800.00 | | Business debt on F |
| CB/Ann Taylor | | $100.00 | Debt owed |
| Chase | $15,000.00 | | Business debt on F |
| Chase-Pier | | | Unknown - personal |
| Farm Credit | $36,000 | | Foreclosure of lot |
| Gercb/Old Navy | | $204.00 | Debt owed |
| Kohls/Capone | | $136.00 | Debt owed |
| Kross/Lieberman & Stone | | $115.00 | Medical |
| Brandon Reiter | | $0.00 | Debt owed |
| Sallie Mae | | $62,000.00 | Student loans |
| Wake Med | | $3,000.00 | Medical |
| **TOTALS** | **$277,158.70** | **$392,099.86** | |

5

**Debtors' classification**

| Creditor | Business | Personal | Description |
|---|---|---|---|
| Bank of America | $7,221.86 | | Nissan |
| Onslow County Tax | $0.00 | | Wilmington lot |
| PNC Bank | | $19,200.00 | Second on residence |
| Quicken | | $291,240.00 | First on residence |
| Summerhouse - HOA | $10,000.00 | | Wilmington lot |
| Wake County Rev. | | $0.00 | Residence |
| Wells Fargo | $130,034.70 | | Wilmington lot |
| IRS | | $0.00 | Notice only |
| NC Dept. Of Rev. | | $0.00 | Notice only |
| Bank of America | $75,724.00 | | Business Debt on F |
| Bank of America | | $8883.00 | Debt owed |
| BB&T | $2600.00 | | Business Debt on F |
| CAM | $7,800.00 | | Business Debt on F |
| CB/Ann Taylor | | $100.00 | Debt owed |
| Chase | $15,000.00 | | Business Debt on F |
| Chase-Pier | | | Unknown - Personal |
| Farm Credit | $36,000 | | Foreclosure of Lot |
| Gercb/Old Navy | | $204.00 | Debt owed |
| Kohls/Capone | | $136.00 | Debt owed |
| Kross/Lieberman & Stone | | $115.00 | Medical |
| Brandon Reiter | | $0.00 | Debt owed |
| Sallie Mae | $62,000.00 | | Student Loans |
| Wake Med | | $3,000.00 | Medical |
| **TOTALS** | **$346,380.56** | **$322,878.00**[2] | |

Consumer debt is defined as debt incurred by an individual "primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). See also In re Stewart, 175 F.3d 796, 806 (10th Cir. 1999) (explaining that courts have applied the 101(8) definition in the context of 707(b) motions). As a contrast, courts have characterized business debt as that which debtors incur with a profit motive. In re Burns, 894 F.2d 361, 363 (10th Cir. 1990). The Fourth Circuit has employed a totality

---

[2]Even the debtors' own categorization results in a very small disparity between consumer and business debt amounts, placing the amount of consumer debt approximately $24,000 less than their business debt.

6

of the circumstances approach in determining whether debts are primarily business or primarily consumer in nature, evaluating the relative number and dollar amounts of claims, as well as good faith in filing petitions. Neufield v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986), In re Green, 934 F.2d 568 (4th Cir. 1991). See also In re Jones, 2009 WL 102442 (Bkrtcy. E.D.N.C.) (extrapolating a standard from precedent that employs a totality test in determining a debtor's good faith in filing petitions and stating that "applying it here is consistent with . . . . precedent").

The debtors have some debts which are clearly and unequivocally consumer in nature. Most specifically, the debtors have two mortgages on their primary residence in the amounts of $19,200 and $291,240. Similarly, there are some debts that are unquestionably business in nature. For example, the debtors amassed debts of $2,600 and $15,000 to establish working capital for 8PM, LLC. Although these credit cards are listed in Mr. Cromwell's name, he pays the balance strictly from business funds and testified to using the cards strictly and exclusively for his business. The bankruptcy administrator does not contest these categorizations.

Other debts, however, are not so clearly defined. For instance, the debtors owe $7,221.86 on a 2007 Nissan Murano, which they admittedly employ for both personal and business use. Additionally, the debtors have Bank of America credit cards with balances of $75,724 and $8,883 (hereinafter card #1 and card #2, respectively). The cards are personal cards but are used for both personal and business purposes. Because 8PM, LLC has no credit cards of its own, Mr. Cromwell used his personal accounts to fund the business. In his testimony, Mr. Cromwell indicated that he intended to generate profits from 8PM, LLC and eventually pay off the debts amassed on these credit cards. What happened instead was the perpetuation of a cycle of borrowing and paying off

7

debts from the business' profits, which the debtors' counsel aptly labeled "borrowing from Peter to pay Paul."

The available evidence does not support characterizing the entire Bank of America debt as consumer debt. However, the court can reasonably conclude that a substantial portion of the debt was consumer in nature. Both Bank of America cards were personal credit cards that the debtors used in part to fund 8PM, LLC. But, Mr. Cromwell testified that he had card #1 for "a very long time" and opened the account well before establishing his business in 2011. He also testified that a "percentage" of the card was used to pay personal expenses, and admitted that Mrs. Cromwell routinely used card #2 for consumer purchases. Where debt has more than one purpose or is the result of a commingling of personal and business expenses, courts look to the predominant purpose of the debt to categorize it as primarily business or consumer. In re Rucker, 454 B.R. 554 (Bankr. M.D. Ga 2011).

The record does not provide a percentage breakdown of the personal and business expenses on the Bank of America cards; the testimony simply indicates that the cards serve a dual purpose. The debtors ask the court to deem the debts on credit cards which they admit to using for both personal and business expenses as *primarily* profit-driven without specific testimony in support of that conclusion, even though one is a personal credit card opened long before the incurring of any business-related expenses. Employing a totality of circumstances test, especially in light of a backdrop of debts that are more certainly and unequivocally business in nature, the court must find that the commingled debts take on a consumer character.

The Bankruptcy Code does not explain how to categorize debts as "primarily" consumer, and courts are divided in determining whether to consider the overall dollar amount or relative number

8

of claims. In re Jones, 2009 WL 102442, at *2 (Bankr. E.D.N.C. Jan 12, 2009). In In re Jones, this court employed a totality test and examined pre-petition activity as well as the number and character of debts existing on the petition date. The court considered that the debtors had listed a significant number and amount of debts that were truly debts of their corporation. The court acknowledged that it "may be impossible" to determine, based on the schedules alone, the nature of each debt. Accordingly, the court looked to the total concept and feel of the debts in concluding that they were primarily non-consumer. In classifying debts as primarily business, the court considered that the debtors used personal credit cards to fund a business, used equity in their residence to sustain their business, and purchased a vehicle for both business and personal purposes. Additionally, the court acknowledged that prior to opening their business, the debtors had very little total debt. Ultimately, the debtor listed debts that, due to ongoing behavior of the debtors, had become debts of their corporation and led the court to conclude that the debtors' debts were primarily business in nature. In the instant case, excluding an amount of $17,600 that is unequivocally business in nature, the bankruptcy administrator has sufficiently shown that debtors' debts have a distinctly consumer nature. In contrast to the Jones circumstances, the Cromwells have listed a number of debts that are truly personal in nature. Even those debts which they contend are debts of their business are commingled and intertwined with purely personal debts.

    Additionally, in accordance with Jones, this court will consider the Cromwells' pre-petition activities. It is clear from those activities, that the debtors used business funds to alleviate personal debts. The capital in 8PM, LLC fluctuated from $50,000 to $70,000. This funding remained in the business account. However, Mr. Cromwell testified that at and before filing for bankruptcy, the debtors began to use these business funds to pay personal bills. Mr. Cromwell routinely wrote

9

himself checks from the 8PM, LLC account totaling $123,710 from June, 2013, through October, 2014. The debtors stipulate to using business money to fuel their cars, feed themselves, and pay their personal bills. The bankruptcy administrator calculated the total expenses paid from the 8PM, LLC account from December 2013 through May 2014, based on the debtors' denotation of each expense as business or personal. The debtors spent a total of $76,974.41 on personal expenses and $31,210.51 on business expenses from the business' account. This pre-petition view leads to the conclusion that the debtors' debts are overwhelmingly consumer in nature.

In arguing that their debts are primarily business, the debtors place great weight on the fact that they attribute the primary source of their debt and the "crushing blow" to their two investment lots—one near Wilmington and one in Rockingham County—which they purchased with the intention of flipping for a profit. Mr. Cromwell testified that he would not have filed for bankruptcy if not for his failed investment in this raw land. But the court notes that these debts in the amount of $183,834 are relatively small compared to both the number and the total dollar amount of all secured and unsecured claims. Although a totality of the circumstances analysis may include consideration of the impetus for filing, in the end, calculation of the total debt is determinative. In re Fish, 2014 WL 657247 (Bankr. E.D.N.C.). Additionally, the debtors contend that the approximately $62,000 in student loans from Mr. Cromwell's undergraduate education and his master's degree in business administration constitute business debt. The debtor testified that he obtained both degrees to enhance his employability and to make money. However, whether the court characterizes this debt as consumer or business in nature will not affect the result. As is shown by the chart below, characterization of the lot debt and student loan debt as business still results in

10

a predominance of consumer debt once the court's classification of the credit card debt is taken into account.

| **Creditor** | **Business** | **Personal** | **Description** |
|---|---|---|---|
| Bank of America | | $7,221.86 | Nissan |
| Onslow County Tax | | $0.00 | Wilmington lot |
| PNC Bank | | $19,200.00 | Second on residence |
| Quicken | | $291,240.00 | First on residence |
| Summerhouse - HOA | $10,000.00 | | **Wilmington lot** |
| Wake County Rev. | | $0.00 | Residence |
| Wells Fargo | $130,034.70 | | **Wilmington lot** |
| IRS | | $0.00 | Notice only |
| NC Dept. Of Rev. | | $0.00 | Notice only |
| Bank of America | | $75,724.00 | Debt owed |
| Bank of America | | $8883.00 | Debt owed |
| BB&T | $2600.00 | | Business Debt on F |
| CAM | $7,800.00 | | Business Debt on F |
| CB/Ann Taylor | | $100.00 | Debt owed |
| Chase | $15,000.00 | | Business Debt on F |
| Chase-Pier | | | Unknown - Personal |
| Farm Credit | $36,000 | | **Foreclosure of Lot** |
| Gercb/Old Navy | | $204.00 | Debt owed |
| Kohls/Capone | | $136.00 | Debt owed |
| Kross/Lieberman & Stone | | $115.00 | Medical |
| Brandon Reiter | | $0.00 | Debt owed |
| Sallie Mae | $62,000.00 | | **Student Loans** |
| Wake Med | | $3,000.00 | Medical |
| **TOTALS** | **$263,434.70** | **$405,823.86** | |

The court finds that the debtors have primarily consumer debts and therefore, § 707(b)(1) is applicable, and the court will move onto a § 707(b)(3) analysis to determine abuse.

2. *Whether granting the debtors relief would constitute an abuse under § 707(b)(3)*

The bankruptcy administrator argues that the debtors have more income than reflected on Schedule I, thus constituting abuse and warranting dismissal under (b)(3). At the hearing, the bankruptcy administrator also contended that the debtors' family and household expenses are unreasonable. The court agrees. Section 707(b)(3) provides guidance to the court in a determination

11

of abuse by requiring the court to consider "whether the debtor filed the petition in bad faith; or [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3). Courts employ a factor-based analysis in determining whether a debtor's financial situation demonstrates abuse. Five factors enumerated in In re Green, 934 F.2d 568 (4th Cir. 1991), include: 1)whether the petition was filed because of sudden illness, calamity, disability, or unemployment; 2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; 3) whether the debtor's proposed family budget is excessive or unreasonable; 4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the debtor's true financial condition; and 5)whether the petition was filed in good faith.[3] The parties have concentrated on the third and fourth criteria, as will the court.

3. *Whether the debtors' proposed family budget is excessive or unreasonable*

Although the court is sympathetic to the debtors' financial difficulties, their monthly consumer expenses must be reasonable and weighed against their obligations to distribute disposable income to creditors. The evidence tends to show that the debtors incurred personal expenses that are both unnecessary and inappropriate given their financial situation. After filing for bankruptcy, debtors enjoyed several family vacations, most noteworthy a trip to Boston that included spending $4,000 on Boston Red Sox tickets, and multiple weekend trips for their children's various sporting events. In spite of summarily testifying that the family had made lifestyle adjustments in light of their financial troubles, the debtors presented no specific evidence that they made any change to

---

[3] Courts have acknowledged the continuing applicability of the Green factors post-BAPCPA. In Re Wolf, 390 B.R. 825 (Bankr. D.S.C. 2008); Calhoun v. U.S. Trustee, 650 F.3d 338, 340-41 (4th Cir. 2011).

their lifestyle. Rather, they continued to amass recreational expenses including restaurant meals, sporting events, and weekend vacations to popular tourist destinations.

Equally detrimental to the debtors' request for relief, however, is Mr. Cromwell's $30,000 payment to his student loan provider in January, 2014. This payment is particularly suspect in that Mr. Cromwell is contractually obligated to pay only $450 per month. This court has recognized that debtors may not pay one unsecured creditor to the detriment of others. In <u>In re Christians</u>, 2012 WL 4846538, a debtor seeking chapter 7 relief amassed more than $60,000 in student loans for his undergraduate and graduate educations and prioritized paying these debts. The court noted that "[a] debtor who voluntarily pays one unsecured creditor, while paying other unsecured creditors nothing and seeking discharge with respect to the latter debts, is attempting to circumvent the distribution set forth in § 726." <u>Id</u>, at *8. Mr. Cromwell offered no plausible explanation for making this large lump payment to his student loan provider.

A.   <u>Whether debtors' schedules and statement of current income and expenses reasonably and accurately reflect their true financial condition</u>

On Schedule I, Mr. Cromwell reported a monthly income of $0 at the time of filing for bankruptcy. However, Mr. Cromwell's testimony indicated that he and his wife together have a net monthly household income in excess of the $3,465.02 originally reported. Additionally, the testimony revealed discrepancies between Schedule J and the debtors' actual monthly expenses. Although these schedules may have been representative of the debtors' income and expenses at the time the petition was filed, the testimony suggested that the debtors may have some ability to pay.[4]

---

[4] The testimony indicated that the debtors created a revised Schedule J reflecting the changes in their monthly expenses, and submitted the revised schedule to the bankruptcy administrator.

This remains a significant consideration in a totality of the circumstances analysis, and militates in favor of a finding of abuse. See, e.g., In re Christians at *7 (stating "[t]he fact that the original schedules are no longer correct is particularly relevant to evaluating the debtor's ability to pay, which remains a significant consideration in the totality of the circumstances analysis."). In Hamilton v. Lanning, 130 S.Ct. 2464, 2478 (2010), the Supreme Court held that a bankruptcy court may consider changes in a debtor's income or expenses that are "known or virtually certain at the time of confirmation [of a chapter 13 plan]." In the instant case, it is virtually certain that the debtor no longer has an income of $0. The court may consider this in determining what may be available to creditors. The fact that the original Schedule I is no longer correct is particularly pertinent to evaluating the debtors' ability to repay, which the court will next consider.

      B.      Whether the debtors are likely able to repay creditors

The debtors' present ability to repay creditors is a separate and weighty factor in finding abuse: "The ability to repay creditors is generally evaluated by the amount a debtor would be able to commit to a hypothetical Chapter 13 plan." In re Sonntag, 2012 WL 1065482 *4 (Bankr. N.D.W. Va. 2012).

Prior to filing, Mr. Cromwell generated no income. Now, however, he testifies that he *can* pay his creditors up to $2,500 per month.[5] It is noteworthy that Mr. Cromwell has continued to pay the debt on a BB&T card (despite being expressly advised by counsel not to do so). Thus, it is likely that the debtors are able to begin to repay creditors under a chapter 13 plan. Although an ability to

---

[5] The testimony and record did not clarify the source of this ability to pay. The debtor simply professed a likely ability to generate some income and repay, an ability he did not have at the time of filing for bankruptcy.

repay is not *per se* abuse, it lends further support to a finding that the debtors are not entitled to chapter 7 relief.

      Evaluation of the totality of the circumstances, including a consideration of the third and fourth <u>Green</u> factors, as well as the debtors' indication of an ability to begin to repay, weighs in favor of dismissal of the case. The court will allow the motion of the bankruptcy administrator to dismiss, but give the debtors an opportunity, within 21 days of the entry of this order, to convert the case to chapter 13.

**END OF DOCUMENT**